No. 34,242

EARL F. WAKEFIELD, *Appellant,* v. L. A. FARRIS and MANAGED OIL ROYALTIES, *Appellees.*

(89 P. 2d 855)

Opinion filed May 6, 1939.

*J. B. McKay,* of El Dorado, for the appellant.

*George B. Collins, Wm. F. Pielsticker* and *W. C. Attwater,* all of Wichita, for the appellees.

The opinion of the court was delivered by

HARVEY, J.: This was an action for a sum claimed to be due upon a contract for the operation of an oil and gas lease. The trial court sustained a demurrer to the petition and to the amended petition, and plaintiff has appealed from both rulings.

The allegations of the amended petition may be summarized as follows: On November 18, 1935, D. L. Snider and wife, as lessors, executed an oil and gas lease to L. A. Farris, as lessee, covering certain described land in Stafford county, which lease was duly recorded January 3, 1936. On November 22, 1935, Farris entered into a written "drilling contract" with plaintiff (and M. B. Armer, whose

interest has been acquired by plaintiff), which contract was duly recorded. A copy of the contract was attached to and made a part of the petition. By its terms plaintiff was to begin the drilling of a well for oil or gas on the lease by January 1, 1936. When the well was spudded in Farris was to assign to plaintiff an undivided three-fourths interest in the lease and certain dry-hole letters and an oil purchase agreement. Plaintiff was to drill the well with reasonable diligence and dispatch, and at his sole cost and expense, to a depth sufficient to test the siliceous lime, approximately 3,500 feet. If the well were a dry hole he was to plug and abandon it in accordance with statutory requirements, and—

"If said well shall be a producing well, drillers shall complete and equip same for production and shall reimburse themselves out of the oil produced for the cost and expense of so doing and of drilling said well. After drillers have been completely reimbursed out of the oil produced for the expense of drilling and completing and equipping the well, Farris shall have an undivided ¼ (one-fourth) interest in said well and lease and all oil produced thereafter.

"In the event the drilling of said well shall result in the production of oil and/or gas in paying quantities, Earl F. Wakefield shall have the exclusive operation, management, and control of said well and shall operate and manage all additional wells or development upon the jointly owned lease. Said wells shall be drilled and operated for the joint account of the parties hereto, each party paying his prorata share of the expense and costs and being entitled to his proportionate share of all production resulting from said operations."

It provided that additional wells should not be drilled unless to protect offsets or the validity of the lease, and that no item of expense in excess of $3,000 shall be incurred, except by mutual consent of the parties thereto. It further provided that by the 15th of each month plaintiff should mail to defendants a statement showing in detail operating expenses of the previous month, and what should make up those items was stated, and by it Farris agreed to pay his proportionate share of the cost and expense disclosed by the statement on or before the 25th day of each month. It provided plaintiff should have a lien upon his share of the oil run as security for such payment. It further provided that wherever the contract was silent as to the rights and obligations of the parties the field practices and customs in the mid-continent field should control. It further provided that the terms of the agreement should be construed as covenants running with the leasehold estate and be binding upon the heirs and successors in interest of the parties. Later Farris transferred one-half of his interest to the Managed Oil Royalties, Inc.

In each of the petitions it was alleged in substance that plaintiff commenced drilling the well within the time stated in the contract and completed it as a producing well at a depth of 3,111 feet on March 21, 1936, and equipped the same for production, and that all of the matters to be done and performed with respect to the parties to the contract were carried out. This action does not involve any of the expense incurred by plaintiff for the drilling of the well and equipping it for production.

It was alleged that thereafter plaintiff operated the well and the lease as provided in the contract; that in April, 1936, the well was treated with 1,000 gallons of acid, which increased its production; that in August, 1936, plaintiff deepened the well to 3,145 feet and it was treated with 3,000 gallons of acid; that in October, 1937, plaintiff deepened the well to 3,372 feet. Other work done on the well is detailed.

It was alleged that for operating the lease after the well was first completed and equipped for production, and for the additional expenses incurred by plaintiff, plaintiff rendered monthly statements to defendants of the cost of operating the lease and the additional work done, all computed and furnished as provided by the contract, but that defendants have failed to pay their share of such cost and expense as by the contract they had agreed to do. Copies of these statements are attached to the petitions as exhibits.

In the amended petition it was alleged that at each of the times the well was acidized or deepened, or other work done on the lease, involving unusual expense, plaintiff discussed the advisability of doing the work and incurring the expense with the defendants, and each of them, and that on each occasion they orally agreed that the work should be done and the expense incurred, and specifically promised to pay their share, as provided in the written contract. The action is to recover from the defendant Farris $4,655.67 and for judgment against the corporate defendant for one-half thereof, being the share of the operating expenses of the lease as computed by plaintiff, which they are obligated to pay under the terms of the contract.

The legal question presented is whether defendants are personally liable for their proportionate part of the cost and expense of operating and developing the premises for oil and gas purposes, which cost and expenses were incurred after the first well was drilled and was in fact a producing well and was equipped for production. The

written contract seems to make it clear that thereafter the lease was to be operated for the joint account of the parties, and it contains a specific agreement that defendants will pay their proportionate share of the cost of such operation.

In support of the judgment of the trial court it is contended that defendants were not the owners of an interest in the lease at the time the expenditures here involved were made. This argument is predicated upon the following sentence in the contract:

"After drillers have been completely reimbursed out of the oil produced for the expense of drilling and completing and equipping the well, Farris shall have an undivided ¼ (one-fourth) interest in said well and lease and all oil produced thereafter."

Obviously this sentence was placed in the contract to make it clear that Farris would have a one-fourth interest in the first well after plaintiff had been reimbursed by oil produced for the cost of drilling and equipping the well for production. Farris had assigned but three-fourths of the lease to plaintiff. He retained at all times an undivided one-fourth interest in the lease; hence, it cannot be said that he had no interest in the lease at the time the expenditures involved in this action accrued.

Appellees argue that all payments by defendants were to have been made only out of oil produced from the well. This argument appears to be based upon the provisions of the contract which give plaintiff a lien upon defendants' share of the oil produced for their share of the expenses of operating the lease. The fact plaintiff had a lien to secure these payments does not destroy the positive agreement of Farris, contained in the lease, to pay each month his share of these operating expenses.

Appellees further argue that the oral agreements pleaded in the amended petition respecting the deepening of the well and treating it with acid were void. The point is not well taken. The written contract provides that expenditures in excess of $3,000, and certain other expenditures, should not be made by plaintiff without the mutual consent of the parties. In other words, the written contract provides for mutual agreements of this character. Such agreements were essential if the cost of the particular operation in question exceeded $3,000. If they were less than that the contract apparently left it to plaintiff's judgment, but even as to those, consultation and mutual consent certainly would not be improper, and as alleged they tend to show the interpretation the parties themselves placed upon the written contract.

We think the court erroneously sustained the demurrer to the petition, and particularly to the amended petition. ·The judgment of the court below is reversed, with directions to overrule the demurrer to the amended petition.